PILAR MÉNDEZ MERCADO, Plaintiff and Appellant, v. SUCS. DE BLANES, S. en C., Defendant and Appellee.

No. 6145.   Argued June 6, 1933.—Decided July 28, 1934.

*M. Acosta Velarde* and *D. Pellón, Jr.* for appellant.   *Juan B. Soto* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

In a motion for a nonsuit the District Court of San Juan rendered judgment for the defendant. The plaintiff was injured due to an impact from an automobile belonging to the defendant but the latter set up in effect that the person who was responsible for the accident had no agency, nexus, or relation with the defendant corporation.

The defendant, itself a corporation, was the agent of the Cotton Spool Co. and the said defendant was located in Maya-güez. In San Juan it had an agency in charge of Antonio Enrich. In accordance with a contract the defendant furnished Enrich with an automobile for the trips of the latter around the island and also supplied the gasoline. The defendant did not give Enrich a chauffeur nor authorize him to employ one. Enrich drove the automobile himself. On a certain occasion, on or about the 10th of March, 1932, while he was in Cayey, the automobile suffered an accident and Enrich felt obliged to leave it in that city to be repaired. A

mechanic undertook to repair it and agreed to notify Enrich when the repairs were completed, so that Enrich could send for it. On being so notified, and being very busy, Enrich sent José Morales Ayala to bring the automobile back to San Juan. Morales was a chauffeur and an employee of the Garage Popular. Before setting out, Morales drew the attention of the mechanic to the fact that the brake belonging to the left rear wheel exerted more pressure than the other brakes, but the latter gave no importance to the matter. Between Caguas and Cayey, on attempting to apply the foot brake, Morales noticed that the automobile swerved to the left, but he went on. After passing Río Piedras the automobile struck the plaintiff. The testimony tended to show that despite the fact that the automobile was making zig zags, Morales did not stop. The business of Enrich was to sell the goods of the defendant and he was given directly no duties as chauffeur.

It appeared so strongly from the evidence that Enrich was not at Cayey when the automobile was turned over to Morales that we shall not discuss certain supposed admissions that the answer contained. Likewise it was perfectly clear that Enrich was not in the automobile at the time of the accident.

The appellant insists with quite some show of authority that an agent of a corporation in charge of an automobile has authority to employ a subagent. In some of these cases the agent was especially employed as a chauffeur. The appellee presents authorities to the effect that when an agent employes another agent, such agency must be in the line of work for which the agent is employed. Of course, the defendant knew that Enrich was using an automobile to deliver or sell goods.

Our general impression is that the agency of Morales to Blanes & Co., the defendant, was too remote to establish an obligation on its part.

Section 1804 of the Civil Code provides:

"The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

"The father, an on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

"Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.

"Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties.

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

"Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

"The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

If the attempt is to say that Blanes & Co. was an enterprise within the meaning of said section, then Morales was not in any sense an agent employed in the branch of the service for which Enrich was employed. The latter was not a chauffeur of the company. Perhaps if Enrich had employed Morales as subagent to sell goods and had permitted the latter to use the automobile, Morales could have been considered to be a substitute of Enrich.

More positively it appears that Morales was employed to do an act entirely independent. In other words, he was engaged to transfer an automobile from one spot to another. If for example the "Garage Popular" had been hired to transport the automobile from Cayey to San Juan no question would have arisen. The fact that Morales was an individual chauffeur, instead of a corporation dedicated to hiring, can make no difference.

Something to the foregoing effect we said in *Candal* v. *Sociedad Auxilio Mutuo*, 37 P.R.R. 810, 822, as follows:

''Under the law as it now stands a business man who telephones for his car would not be responsible for injuries caused by the negligence of his servant, the driver, while on the way to town in response to the call. But if the same car, when not actually occupied by the owner, were used as a delivery wagon in connection with the business of the owner, and if an accident due to the negligence of the driver should occur while the car was being so used, then the owner would be liable. If the owner of a sugar mill were to send his private car with the chauffeur and an inspector of cane on a tour of inspection among the plantation owners who were parties to grinding contracts or contracts for agricultural advances entered into with such owner, he would be responsible for any accident that might occur as the result of negligence on the part of his driver. If a similar accident should occur while the chauffeur with the same car was on his way to a theater for the purpose of placing the vehicle at the disposal of the owner and his family after the performance in accordance with instructions received from such owner, the master would not be liable. The only logical basis for any such distiction must be found in the fact that in all cases where the owner can be held liable the car in question, at the time of the accident, is earning for the owner a pecuniary profit on the money invested in the vehicle and on the cost of maintenance including the salary of the driver, while in all instances in which the owner can be regarded as immune the car is purchased and kept at considerable expense with no thought of a monetary return on the investment, but rather for the ease, comfort, convenience, pleasure and enjoyment of such owner.''

In that case we considered *Vélez* v. *Llavina*, 18 P.R.R. 634, and Sections 1803 and 1804 of the Civil Code.

Error was also assigned for failure to grant a new trial. This assignment went to a certain extent to the facts, but in any event we find no error.

The judgment should be affirmed.